FILED

2020 May-07  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DARRELL WAYNE SIMPSON, et al.,** | ] |
| | ] |
| **Plaintiffs,** | ] |
| | ] |
| **v.** | ]          **2:19-cv-1110-ACA** |
| | ] |
| **DEUTSCHE BANK NATIONAL** | ] |
| **TRUST COMPANY, as TRUSTEE** | ] |
| **FOR AMERIQUEST MORTGAGE** | ] |
| **SECURITIES INC., ASSET-BACKED** | ] |
| **PASS-THROUGH CERTIFICATES** | ] |
| **SERIES 2005-R11, et al.,** | ] |
| | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION AND ORDER

In an extremely poorly pleaded complaint that sets out almost exclusively conclusory factual allegations, Plaintiffs Darrell Wayne Simpson and Sheena Simpson assert against their mortgage servicer, Ocwen Loan Servicing, LLC's ("Ocwen"), claims for: (1) negligence ("Count One"); (2) wantonness ("Count Two"); (3) unjust enrichment ("Count Three"); (4) breach of contract ("Count Four"); (5) violations of the Truth in Lending Act ("TILA") ("Count Five"); (6) violations of the Real Estate Settlement Procedures Act ("RESPA") ("Count Six"); (7) violations of the Fair Credit Reporting Act ("FCRA") ("Count Seven"); (8) violations of the Fair Debt Collection Practices Act ("FDCPA") ("Count Eight"); (9) violations of the Telephone Consumer Protection Act ("TCPA") ("Count Nine");

(10) declaratory relief ("Count Ten").  (Doc. 1-1 at 5–15).  Ocwen has moved for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c), on all claims.  (Doc. 10).  In their response, the Simpsons informally request leave to amend their complaint.  (Doc. 21 at 17, 19, 25, 28, 30).

The court **GRANTS IN PART** and **DENIES IN PART** Ocwen's motion for judgment on the pleadings.  The court **DENIES** the motion with respect to Count Three (unjust enrichment), Count Nine (violation of the TCPA), and Count Ten (declaratory relief) because the Simpsons made factual allegations just barely sufficient to state claims for unjust enrichment and violations of the TCPA, and Ocwen's only argument in support of judgment on Count Ten was the failure of all of the underlying claims.  The court **GRANTS** the motion for judgment on the pleadings with respect to all of the remaining claims.  Finally, the court **DENIES** the Simpsons' motion to amend because the pleadings have closed and, alternatively, because the Simpsons have not set out the substance of their proposed amendments.

## I.    INTRODUCTION

The court notes that the Simpsons' complaint is a quintessential shotgun pleading.  It "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).  It also

"assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Id.*

The Simpsons' attorney is well aware of what a shotgun pleading is.  He filed this lawsuit in June 2019, and Ocwen removed it to this court in July 2019.  (Docs. 1, 1-1).  A year earlier, the Eleventh Circuit had named the Simpsons' attorney, his law firm, and the city in which he works in an opinion condemning his manner of pleading complaints.  *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1352 & n.2 (11th Cir. 2018).  In that case, as in this one, the plaintiffs (represented by the same attorney as the plaintiffs in this case) filed a lawsuit relating to a mortgage in state court and the defendants removed the case based on federal question jurisdiction. *Id.* at 1353.

Although counsel defended his style of pleading the case as permissible under state court standards, the Court noted that counsel had to have known that the case would be evaluated under federal pleading standards because of the inclusion of the federal causes of action and his history of filing other, almost identical, lawsuits, many of which were removed to federal court.  *Jackson*, 898 F.3d at 1360 & n.15. Moreover, in the brief opposing judgment on the pleadings in this case, counsel acknowledged that the court could find the complaint to be a shotgun pleading.

(Doc. 21 at 12).   A year later, counsel filed this complaint, rife with the same problems presented in the *Jackson* case.

The court finds itself in a difficult position.   On the one hand, the shotgun complaint has fired off a round of allegations that are often conclusory or seemingly irrelevant.   Unfortunately, Ocwen did not bring the deficiencies in the pleading to the court's attention in a motion for a more definite statement, under Federal Rule of Civil Procedure 12(e), at an earlier stage in the proceeding.   Nor did the court notice those deficiencies in time to *sua sponte* order repleading.   *See Jackson*, 898 F.3d at 1357–58 (instructing district courts to order repleading even in the absence of a motion from the opposing party).   But pleadings and discovery have closed in this case, and, as the court will discuss more thoroughly below, it would not be fair to Ocwen to permit the Simpsons to flout the court's scheduling order and allow amendment at this late stage.   Accordingly, the court finds itself forced to piece together the allegations in the complaint as best it can.   With that in mind, the complaint appears to allege the following facts.

## II.   BACKGROUND

In reviewing a Rule 12(c) motion for judgment on the pleadings, the court "must take the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party."  *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th

Cir. 1999).  But the court is "not bound to accept as true a legal conclusion couched as a factual allegation."[1]  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In 2005, the Simpsons bought real property located in Birmingham, Alabama. (Doc. 1-1 at 3 ¶ 5).  They executed a mortgage on the property and signed a promissory note with Ameriquest Mortgage.  (*Id.*).  Under the mortgage contract, the mortgagee pays insurance and taxes from an escrow account.  (*Id.*).  At some point, Ocwen and another company "allegedly" acquired the loan.[2]  (*Id.* at 4 ¶ 7; *see also id*. at 4 ¶ 9).  In 2012, Ocwen began servicing the loan, while the other company took over full ownership of the loan.  (*Id.* at 4 ¶ 8).

The Simpsons allege that Ocwen never sent the monthly statements required by Regulation Z, 12 C.F.R. § 1026.41.  (Doc. 1-1 at 10 ¶ 44).  And although they sent monthly payments that Ocwen accepted, Ocwen did not apply those payments to their account.  (*Id.* at 4 ¶ 13, 7 ¶ 33).  At other times, Ocwen returned payments to the Simpsons without explanation.  (*Id.*).  Ocwen also charged attorney's fees and other fees that the mortgage contract did not authorize.  (*Id.* at 9 ¶ 42).  Although the complaint is not entirely clear, the Simpsons appear to allege that Ocwen has either

---

[1] The court may also consider documents outside the pleadings if "they are central to the claim at issue and their authenticity is undisputed."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014).  Ocwen attached the promissory note and the mortgage to its motion for judgment on the pleadings.  (Docs. 11-1, 11-2).  However, because those documents are not necessary to resolve the motion for judgment on the pleadings, the court does not consider them.

[2] The Simpsons originally named the other company as a defendant, but the court dismissed that defendant for the Simpsons' failure to perfect service on it.  (Doc. 20).

successfully foreclosed on the home (*id.* at 10 ¶ 48 (stating that the Simpsons "were not able to stop the foreclosure on their home") or has merely attempted to foreclose on the property (*id.* at 3 ¶ 6 (stating that the Simpsons "current reside at" the property at issue)); *id.* at 5 ¶ 16 (stating that Ocwen "negligently attempted" a foreclosure); *id.* at 6 ¶ 26 (same)).[3]

In addition, at some point before September 2015, Ocwen reported to credit bureaus that the Simpsons were in default on their loan. (Doc. 1-1 at 11 ¶ 50). From September 2015 until January 2019, the Simpsons contacted Ocwen to dispute those reports. (*Id.*). And in November 2016, December 2016, and January 2017, they disputed the reports with the credit bureaus themselves. (*Id.*). But Ocwen continued to keep reporting the account as delinquent and failed to conduct any investigation into the disputes. (*Id.* at 11–12 ¶¶ 50–56).

In October 2016, June 2017, and January 2018, the Simpsons submitted "qualified written requests" to Ocwen, but Ocwen never acknowledged receipt of those requests or responded to them. (Doc. 1-1 at 10 ¶ 48). Around the same time period—between June 2015 and February 2019—Ocwen repeatedly used an automatic telephone dialing system to call the Simpsons' cell phones. (Doc. 1-1 at 14 ¶ 66).

---

[3] "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

## III.   DISCUSSION

Ocwen moves for judgment as a matter of law on all counts asserted against it.  (Doc. 10).  Rule 12(c) permits the court to grant judgment on the pleadings after the pleadings are closed.  "Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law."  *Mergens*, 166 F.3d at 1117.  The court will first address several general arguments the Simpsons raise in opposition to the motion, before turning to whether the merits of the Simpsons' claims, and concluding with their informal request to amend the complaint.

### 1.  Preliminary Matters

First, the Simpsons argue that a Rule 12(c) motion is inappropriate because the pleadings are not yet closed.  (Doc. 21 at 2 n.1).  However, the time for amending pleadings as a matter of course under Federal Rule of Civil Procedure 15 has passed, and under the court's scheduling order, the deadline to amend with permission was September 30, 2019.  (Doc. 8 at 1).  Moreover, discovery closed in this case on February 28, 2020.  (*Id.* at 2).  Thus, the pleadings have closed, and a motion for judgment on the pleadings under Rule 12(c) is appropriate at this stage of the case.

Next, the Simpsons argue that under Alabama Rule of Civil Procedure 84, the complaint satisfies the pleading standard allowed under Alabama law.  (Doc. 21 at 5–6).  But after removal of an action to federal court, the Federal Rules of Civil

Procedure govern the case. *See* Fed. R. Civ. P. 81(c)(1). The Simpsons' attorney knows this quite well. *See Jackson*, 898 F.3d at 1360 (rejecting counsel's argument that Alabama courts "readily accept the sort of pleadings he files" because he knew the case would be evaluated under the federal standard). Thus, the court must grant judgment on the pleadings if the complaint fails to state a claim under the federal pleading standard.

Under the federal pleading standard, the court must dismiss a claim if the plaintiff fails to plead "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *see Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) ("[U]nder 12(b)(6) or Rule 12(c), the question [is] the same: whether the count state[s] a claim for relief."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks, alteration, and citation omitted).

2. <u>Judgment as a Matter of Law</u>

    *a.  Counts One and Two (Negligence and Wantonness)*

    In Count One, the Simpsons assert that Ocwen negligently: serviced the loan, attempted to collect sums they did not owe; caused their property insurance to be canceled, defaulted them, attempted a foreclosure sale, failed to ensure that information disseminated to others was not false, failed to properly train employees on how to investigate disputed accounts, failed to properly train or supervise employees and agents about how to handle a loan account, and failed to remove an adverse report from Mr. Simpson's credit once he disputed it.  (Doc. 1-1 at 5 ¶ 16). In Count Two, the Simpsons assert that Ocwen acted wantonly for all the same reasons they allege Ocwen acted negligently.  (Doc. 1-1 at 5–6 ¶ 20).

    Under Alabama law, to state a claim for negligence, a plaintiff must allege facts showing "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."  *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (quotation marks and citation omitted).  To state a claim for wantonness, a plaintiff must allege facts showing that "the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty."  *Id.* (quotation marks and citation omitted).

    Ocwen contends that judgment on the pleadings is appropriate because the Simpsons did not allege that Ocwen owes them a duty regarding the servicing of

their loan; Alabama law does not recognize a claim of negligent or wanton servicing of a mortgage; the FCRA preempts any claim of negligence arising from a data furnisher's reporting of information to a consumer reporting agency; and the Simpsons have not alleged facts adequate to support a negligent or wanton supervision claim. (Doc. 11 at 7–9 & n.2). The Simpsons respond that Ocwen's duty arises from the RESPA. (Doc 21 at 13–14). They also state in a conclusory manner that they asserted facts sufficient to state a wantonness claim, without providing any argument or discussion of the facts. (*Id.* at 15–16).

The Alabama Supreme Court has held that no cause of action for negligent servicing of a mortgage is available under Alabama law. *U.S. Bank Ass'n v. Shepherd*, 202 So. 3d 302, 314–15 (Ala. 2015). And a number of federal courts have found that because Alabama law does not provide for negligent servicing of a mortgage, a plaintiff cannot assert a claim for negligent hiring, supervision, or training arising out of negligent servicing of a mortgage. *See James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1200–01 (S.D. Ala. 2015); *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1235 (N.D. Ala. 2013); *Tidmore v. Bank of Am., N.A.*, 2017 WL 467473, at *4–6 (N.D. Ala. Feb. 3, 2017). The court finds that analysis persuasive. Accordingly, to the extent the Simpsons assert claims for negligent servicing of the mortgage or negligent training or supervision, Alabama law does not support those claims.

The Simpsons also fail to state a claim that Ocwen negligently failed to remove a false credit report. Putting aside the conclusory nature of the pleading for this claim, the Simpsons appear to allege that Ocwen furnished inaccurate data to a consumer reporting agency. (*See* Doc. 1-1 at 5 ¶ 16). The FCRA regulates the responsibilities of data furnishers. 15 U.S.C. § 1681s-2. It also prevents any State from imposing any "requirement or prohibition . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Id.* § 1681t(b)(1)(F).[4] Accordingly, the Simpsons cannot assert a state law claim for negligence or wantonness against Ocwen based on its report to any consumer reporting agency.

Because the Simpsons have not stated a claim for negligence or wantonness, the court **GRANTS** Ocwen's motion for judgment on the pleadings with respect to Counts One and Two and **WILL DISMISS** those counts **WITH PREJUDICE**.

---

[4] The Simpsons did not respond to Ocwen's preemption argument but, to the extent that the FCRA's other preemption provision, found in 15 U.S.C. § 1681h(e), would apply, they still fail to state a claim. Section 1681h(e) permits a consumer to sue a data furnisher for negligence based on information disclosed to other consumers and users of consumer reports only if the data furnisher disclosed the information "with malice or willful intent to injure such consumer." The Simpsons neither allege that Ocwen furnished information to another consumer or user of a consumer report, nor that any disclosure was done with malice or willful intent to injure them.

### b. Count Three (Unjust Enrichment)

In Count Three, the Simpsons assert that Ocwen was unjustly enriched by their payment of fees, insurance proceeds, and equity in the home.  (Doc. 1-1 at 6 ¶ 26).  An unjust enrichment claim requires a plaintiff to show: "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."  *Matador Holdings, Inc. v. HoPo Realty Invs., LLC*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)).

Ocwen contends that judgment on the pleadings is appropriate because the Simpsons did not identify which charges were unauthorized or how Ocwen's conduct was illegal.  (Doc. 11 at 10–11).  Contrary to Ocwen's contention, the Simpsons allege that Ocwen accepted payments but failed to credit those payments to their account and that it charged fees that the mortgage agreement did not authorize.  (Doc. 1-1 at 4 ¶¶ 11, 13).  Although these allegations are brief, they are sufficient to allege that Ocwen retained a benefit.  *See Twombly*, 550 U.S. at 555.  Ocwen makes no other argument in support of judgment with respect to this claim.  (*See* Doc. 11 at 10–11).  Accordingly, the court **DENIES** the motion for judgment on the pleadings with respect to Count Three.

### c. Count Four (Breach of Contract)

In Count Four, the Simpsons assert that Ocwen breached the mortgage agreement by failing to properly apply payments to the Simpsons' account. (Doc. 1-1 at 7 ¶¶ 30–33). To prevail on a breach of contract claim under Alabama law, the plaintiff must establish (1) the existence of a valid contract; (2) the plaintiff's own performance under the contract; (3) the defendant's nonperformance; and (4) that the breach of the contract caused damages. *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009); *see Kennedy v. Boles Investments, Inc.*, 53 So. 3d 60, 74 (Ala. 2010). Ocwen contends that judgment as a matter of law is appropriate because Ocwen is not a party to the Simpsons' mortgage; it is merely the servicer of the loan. (Doc. 11 at 11–12). The Simpsons concede that Ameriquest Mortgage, not Ocwen, is the other party to the mortgage contract. (Doc. 21 at 81). Accordingly, they cannot state a claim for breach of contract against Ocwen, which is not a party to the contract. The court **GRANTS** Ocwen's motion for judgment on the pleadings as to Count Four and **WILL DISMISS** that count **WITH PREJUDICE**.

### d. Count Five (Truth in Lending Act)

In Count Five, the Simpsons assert that Ocwen violated the TILA by failing to provide required notices, making unauthorized and undisclosed charges of attorney fees and other fees not authorized by the mortgage contract, understating

the annual percentage rate, and improperly amortizing the loan, all in violation of the TILA and Regulation Z.  (Doc. 1-1 at 8–9 ¶¶ 40, 42–43).

The TILA provides a private cause of action against "any creditor" who fails to comply with the requirements set out in the Act.  15 U.S.C. § 1640(a).  A party can be a "creditor" as defined by the TILA only if it is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."  15 U.S.C. § 1602(g).

Ocwen contends that judgment on the pleadings is appropriate because Ocwen is not a creditor as defined by the TILA, as the debt was initially payable to Amerquest Mortgage, not Ocwen.  (Doc. 11 at 12–13).  The Simpsons do not respond to that argument.  (*See* Doc. 21 at 19–20).  And indeed, they expressly allege in their complaint that they acquired the loan from Ameriquest Mortgage, not from Ocwen.  (Doc. 1-1 at 3 ¶ 5; *see also id.* at 4 ¶ 7 (stating that Ocwen acquired the loan later)).  Accordingly, Ocwen did not originate the credit transaction, and it is not a creditor against which a TILA claim can be asserted.  The court **GRANTS** the motion for judgment on the pleadings as to Count Five, and **WILL DISMISS** Count Five **WITH PREJUDICE**.

*e.  Count Six (Real Estate Settlement Procedures Act)*

In Count Six, the Simpsons assert that Ocwen violated the RESPA by failing to acknowledge or respond to their qualified written request.  (Doc. 1-1 at 10 ¶ 47). They allege that they made "qualified written requests" on October 29, 2016; June 13, 2017; and January 18, 2018, but that Ocwen never acknowledged receipt or responded to them, and as a result, they were unable to cure any alleged default and a foreclosure sale was scheduled.  (*Id.* at 10–11 ¶¶ 48–49).

If a borrower sends certain statutorily defined mortgage servicers a "qualified written request" for information relating to the servicing of the loan, the servicer must "provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period," 12 U.S.C. § 2605(e)(1)(a), and must either correct the account or provide a written explanation or clarification to the borrower, *id.* § 2605(e)(2)(A)–(C).   A "qualified written request" is "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that" (1) allows the servicer to identify the borrower and (2) states the information the borrower seeks or the reason why the borrower believes the account is in error.  *Id.* § 2605(e)(1)(B).  A violation of § 2605 subjects the servicer to liability for actual damages or, in the case of a pattern or practice of noncompliance, up to $2,000 in additional damages.  *Id.* § 2605(f).

Ocwen contends that judgment on the pleadings is appropriate because (1) the Simpsons fail to allege that the "qualified written requests" they submitted to Ocwen met all of the requirements set out in the statute and (2) the Simpsons did not allege that they suffered any damages or that Ocwen engaged in a pattern or practice of noncompliance. (Doc. 11 at 15–17). The court need not address the second argument because Ocwen prevails on its first argument.

The RESPA expressly defines a qualified written request. *See* 12 U.S.C. § 2605(e)(1)(B). And although the Simpsons allege that what they submitted to Ocwen were "qualified written requests," (*see* doc. 1-1 at 10 ¶ 48), that allegation is conclusory because it does not specify that what they sent met the statutory definition of a qualified written request, *see Twombly*, 550 U.S. at 555. Accordingly, the Simpsons fail to state a claim for violation of the RESPA. The court **GRANTS** the motion for judgment on the pleadings with respect to this count, and **WILL DISMISS** Count Six **WITH PREJUDICE**.

### f. *Count Seven (Fair Credit Reporting Act)*

In Count Seven, the Simpsons assert that Ocwen violated the FCRA by falsely reporting that they were delinquent in paying their mortgage and that they were in default. (Doc. 1-1 at 11 ¶ 50). They allege that they contacted Ocwen from September 2015 until January 2019 and informed Ocwen about its inaccurate reporting, but Ocwen continued to report the account as delinquent and in

foreclosure.[5] (Doc. 1-1 at 11 ¶ 50). Despite the Simpsons' complaints, Ocwen failed to investigate and respond and continued to report the false debt. (Doc. 1-1 at 11–12 ¶¶ 51, 53–56).

The FCRA imposes on data furnishers (1) a duty to refrain from reporting inaccurate information to consumer reporting agencies and (2) on receiving notice of a dispute from a consumer reporting agency, a duty to investigate and report the results to all consumer reporting agencies to which it has furnished inaccurate information. 15 U.S.C. § 1681s-2(a)–(b). The statute creates a private cause of action for willful of negligent noncompliance with the statute, *see id.* §§ 1681n, 1681o, but it expressly exempts data furnishers from liability for providing inaccurate information to consumer reporting agencies, *id.* § 1681s-2(c)(1). Accordingly, a consumer has a private cause of action against a data furnisher only for the data furnisher's failure to investigate and report under § 1681s-2(b).

Under § 1681s-2, a data furnisher must conduct an investigation "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1). Section 1681i(a)(2) sets out the requirements for a consumer reporting agency to notify a data furnisher of a

---

[5] This allegation suffices to establish that the Simpsons have standing to assert this claim. *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) ("We have held that the time spent by a person attempting to correct a false credit report constitutes a concrete injury for purposes of an FCRA claim.").

dispute.  Accordingly, by its terms, § 1681s-2(b) provides a private cause of action based on a data furnisher's failure to investigate only if the data furnisher received notice of the dispute from a consumer reporting agency.

Here, the Simpsons allege that they notified both Ocwen and unspecified consumer reporting agencies of problems with the information Ocwen was reporting.  (Doc. 1-1 at 11 ¶ 50).  But they do not allege that the consumer reporting agencies notified Ocwen of any dispute.  (*See id.*).  The absence of such an allegation is fatal to the FCRA claim.  *See* 15 U.S.C. § 1681s-2(b).  Accordingly, the court **GRANTS** Ocwen's motion for judgment on the pleadings and **WILL DISMISS** Count Seven **WITH PREJUDICE**.

### g.  *Count Eight (Fair Debt Collection Practices Act)*

In Count Eight, the Simpsons assert that Ocwen violated the FDCPA.  (Doc. 1-1 at 13 ¶ 63).  Although the Simpsons recite the statutory language, they provide no facts to support their claim.  (*See id.*).  Ocwen seeks judgment on the pleadings on the basis that the factual allegations, if true, would not establish that it is a debt collector as defined by the FDCPA.  (Doc. 11 at 20–21).  But before addressing Ocwen's argument, the court must determine whether the Simpsons have standing to assert the claim.

Federal courts are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which

have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quotation marks omitted).  Courts are "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* at 410.

Under Article III of the United States Constitution, federal courts have subject matter jurisdiction only over "cases" or "controversies." U.S. Const. art. III, § 2.  One of the requirements to have a case or controversy is standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Standing has three elements: (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547.  The first requirement—injury in fact—requires a showing that the plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48.  Thus, a plaintiff cannot establish standing merely by alleging "a bare procedural violation, divorced from any concrete harm." *Id.* at 1549.

The FDPCA protects consumers from debt collectors' "use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a).  Specifically,

it prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692(e), or any "unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f.

Here, the Simpsons have recited the statutory language of the FDCPA, but have not alleged any facts to support their claim. (Doc. 1-1 at 13 ¶¶ 62–63). The facts that they have alleged do not indicate what, if any, injury they suffered based on any means that Ocwen used to collect the debt. (*See id.* at 4–5 ¶¶ 7–14). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975). The Simpsons have not done so here.

The court notes that in *Pinson v. JPMorgan Chase Bank, National Association*, 942 F.3d 1200, 1205–06 (11th Cir. 2019), the Eleventh Circuit found that a plaintiff had standing to assert an FDCPA claim where he alleged that the defendant had violated the FDCPA and the FCRA by using a false name to report a debt to a consumer reporting agency, by failing to investigate when he disputed the accuracy of the information the defendant had reported, and by requesting his credit report without a permissible purpose. The Eleventh Circuit, addressing both the FDCPA and the FCRA together, held that the plaintiff suffered an injury in fact

because he alleged that "he lost time communicating with [the defendants]; that he incurred out-of-pocket expenses trying to correct misinformation on his credit report; and that he was denied access to credit and paid higher car insurance premiums as a result of [the defendant]'s conduct." *Id.* at 1207.

In this case, the Simpsons do allege that they spent time contacting Ocwen. (Doc. 1-1 at 11 ¶ 50). But they make that allegation in an entirely different count and, in any event, they do not explain how time spent disputing a credit report relates to their FDCPA claim. In *Pinson*, the plaintiff's FDCPA and FCRA claims and the injuries he suffered were closely related. *See* 942 F.3d at 1206–07. But in this case, the Simpsons have not explained what injury they suffered and, to the extent the complaint does allege an injury in fact, it does not explain how that injury is fairly traceable to the conduct supporting an FDCPA claim. *See Spokeo, Inc.*, 136 S. Ct. at 1547.

In the alternative, the Simpsons' FDCPA claim fails on the merits. The FDCPA applies only to debt collectors. 15 U.S.C. §§ 1692e, 1692f. It expressly excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F). The Simpsons do not allege that the debt was

in default when Ocwen obtained it.  (*See* Doc. 1-1 at 4 ¶ 7–8).  Accordingly, they have not alleged facts that, if true, would establish that the FDCPA applies to Ocwen. The court **GRANTS** the motion for judgment on the pleadings with respect to Count Eight and **WILL DISMISS** that count **WITHOUT PREJUDICE** for lack of standing and, in the alternative, for failure to state a claim.

### h.  Count Nine (Telephone Consumer Protection Act)

In Count Nine, the Simpsons assert that Ocwen violated the TCPA by using an automatic telephone dialing system to call their cell phones between June 2015 and February 2019.[6]  (Doc. 1-1 at 14 ¶ 66).

The TCPA prohibits "any person" from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . .  to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  The statute creates a private cause of action for violations of that prohibition, with treble damages available for a knowing or willful violation.  *Id.* § 227(b)(3).

Ocwen contends that judgment on the pleadings is appropriate because the Simpsons fail to allege that it used an automatic dialing system, and fail to specify the cell phone numbers on which they received the calls, that they are the subscribers

---

[6] The Simpsons have standing to assert this claim.  *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019).

or customary users of those numbers, or the dates or times of those calls.  (Doc. 11 at 21–22–23).  Contrary to Ocwen's contention, however, the Simpsons expressly allege that Ocwen used an automatic dialing system to call their cell phones without their prior consent.  (Doc. 1-1 at 14 ¶ 66).  The Simpsons are not required to provide detailed factual allegations about their cell phone numbers or the specific dates or times of the calls they received.  *See Twombly*, 550 U.S. at 555.  Accordingly, the court **DENIES** the motion for judgment on the pleadings with respect to Count Nine.

> i.   *Count Ten (Declaratory Relief)*

In Count Ten, the Simpsons request an order declaring that they are not in default of their mortgage agreement, that the notice of default is void, that Ocwen has no right or authority to foreclose on their property, and that Ocwen improperly serviced the mortgage loan account and breached the contract. (Doc. 1-1 at 15 ¶ 68).  Ocwen's only argument in support of judgment on this claim is that the Simpsons' underlying claims fail as a matter of law.  (Doc. 11 at 23–24).  However, the court has found that the Simpsons stated a claim for unjust enrichment and for violations of the TCPA.  Accordingly, the court **DENIES** the motion for judgment as a matter of law with respect to Count Ten.

### 3.  Amending the Complaint

In their brief, the Simpsons informally request permission to amend the complaint to cure any defects that might warrant judgment in Ocwen's favor.  (Doc.

21 at 17, 19, 25, 28, 30).  Putting aside their failure to file their motion formally on the docket, the court **DENIES** that motion because, as discussed above, the pleadings have closed in this case.  Even if their request was timely, the Simpsons' informal request made in their brief does not explain why amendment would be appropriate in this case.  A request for leave to amend should be accompanied by "the substance of the proposed amendment or . . . a copy of the proposed amendment."  *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018).  The Simpsons simply assert that any deficiencies in the complaint can be corrected by amendment, without explaining how the amendment would correct those deficiencies.  The court finds that at this stage of the case, amendment is not appropriate.

## IV.   CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** Ocwen's motion for judgment as a matter of law.  The court **DENIES** the motion with respect to Count Three (unjust enrichment), Count Nine (violation of the TCPA), and Count Ten (declaratory relief).  The court **GRANTS** the motion with respect to all other counts. The court **DENIES** the Simpsons' motion to amend the complaint.

The court will enter a separate partial judgment consistent with this opinion.

**DONE** and **ORDERED** this May 7, 2020.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE